```
                                              W12-0361
                                              8-20-13
                                              [signature]
                                         JANICE K. CANNING
                                           DEPUTY CLERK
```

STATE OF RHODE ISLAND )          FAMILY COURT
WASHINGTON, SC.

MARGARITA E. PALANGE          :
                              :
   VS.                        :   C. A. No. W12-0361
                              :
STEVEN J. PALANGE             :

## MARITAL SETTLEMENT AGREEMENT

THIS AGREEMENT made on the 20th day of August, 2013, by and between Margarita Palange, of the Town of South Kingstown, County of Washington, State of Rhode Island, hereinafter referred to as the "Wife" and Steven Palange, of the Town of South Kingstown, County of Washington, State of Rhode Island, hereinafter referred to as the "Husband", the parties hereto.

### WITNESSETH:

WHEREAS, the parties were lawfully united in marriage on December 27, 1998 and are now husband and wife; and

WHEREAS, there was one child born of the marriage, namely, K.P. (12-11-2009); and

WHEREAS, in consequence of disputes and irreconcilable differences between the parties, they have separated and are now living separate and apart and intend to live separate and apart for the rest of their lives; and

WHEREAS, a Complaint for an absolute divorce is now pending in the Family Court for the County of Washington, in which the Wife is the Plaintiff and the Husband is the Defendant, and in which case the Husband has filed a Counterclaim for an absolute divorce; and

• WHEREAS, the parties desire to confirm their separation and to adjust and settle between themselves all property rights and obligations growing out of the

1

SP MP

Each parent v;rill keep the other reasonably informed of the child's academic, physical, medical and social activities and will forward to the other parent, in a timely fashion, copies of all significant written communications in this regard.

Any emergency issue involving the child \Vill be handled promptly by the parent who is present or first reached. The other parent will be notified as soon as possible.

The parties are both committed to their role as parents, and they will continue to support each other in their parenting.

B. Placement. }The parties shall have shared placement of the minor child. The parties agree tliat they will not relocate out of state of Rhode Island with the minor child without wTitten permission from the other parent or a court order. Placement of the minor cbild shall be in accordance with the following parenting plan:

   i. The Husband shall have the minor child overnights on Monday, Tuesday and every other Wednesday. The Wife shall have her overnight every other \Vednesday, and every Thursday and Friday.
   ii. Additionally, the parties shall alternate who has the child on the weekend, from Saturday to Monday morning. If it is the Wife's weekend, the Husband shall have the child on the Wednesday, overni£ht.
   iii. Neither parent shall consume more than nvo alcoholic beverages per day when they have the minor child.
   iv. If either parent wants to occasionally take the child when he/she would otherwise be w-ith a third party on the other parent's day, that parent would need to give at least 48 hours notice to do so, and neither parent will unreasonably withhold their assent.
   v. Either parent may take the minor child for up to 3 consecutive mghts, up to four times per year with at least 2 weeks notice to the other parent.
   vi. Either parent may take the minor child for 2 weeks of uninterrupted nonconsecutive vacation time with at least 30 days notice to the othet parent.

C. Plans & Activities: The parties agree that any. plans for vacations and/or activities which involve the J?1IBOI-child will be discussed by both parties prior to discussion of such plans with the minor child:

In the event a vacation plan or activity involve travel more than 100 miles from South Kingstow· Rl, th other parent is to be provided, reasonable advance

3

notice of that travel, all information pertaining to that travel such as airline name, travel time, flight numbers, hotel names and phone numbers and an itinerary for such out-of-state travel. The parents have the right to make reasonable requests for changes in the schedule with appropriate notice and may agree between themselves as to any change in the schedule as previously noted so long as both parties agree.

D. Right of First Refusal. Should either parent have a function, activity-or work-related need that requires their presence for an extended period of time (four hour period) when they are scheduled to be with the minor child, the other parent is to be contacted first for resulting child-care needs prior to anyone else being asked to assist in this regard.

5. CHILD SUPPORT: AB a result of the current visitation schedule where the parties split the time equally with the minor child, the parties agree that the issue of child support will remain open.

6. EXTRA-CURRICULAR ACTIVITIES: Each party will split equally the reasonable and necessary extra-curricular activities of the minor child, provided the parents agree in advance as to the extra-curricular activity and the cost to either party. The parties agree to split equally the cost of all agreed too work-related and school related day care expenses.

7. HEALTH CARE /ul) DENTAL CGVERAGE FOR THE 1fll.10R CHiL.D: The Wife shall continue to provide healthcare and dental insurance coverage for the minor child of the parties for so long as said coverage is provided through the Wife's employment and for so long as the minor child of the parties is eligible therefore.

8. UNIlISURED MEDICAL EXPENSES FOR THE MINOR CHILD: Each of the parties shall contribute equally to the reasonable and necessary uninsured or underinsured medic„ dental, eye care, orthodontia and psychiatric expenses related to the minor child of the parties. Once those expenses have been paid by one of the parties, that party shall have thirty (30) days to seek reimbursement from the other party. The party seeking reimbursement shall be reimbursed within thirty (30) days after notification to the other.

9. HEALTHCARE AN"D DENTAL INSURA WCE FOR THE Pi.RTIES: The parties agree that they will be responsible for their OviTlhealth and dental coverage. The parties shall be solely responsible for any and all uninsured or underinsured medical, dental, eye care expenses, etc. pertaining to them and shall

4



hold the other harmless thereon. The Husband understands upon entry of the Final Judgment, he shall be solely responsible for his own health insurance coverage.

10. LIFE INSURANCE: The current policy on the Wife's life is owned by the Husband and the policy on the Husband's life is owned by the Wife. The parties agree to transfer ownership of each to the other so that the Wife owns the policy on her life and is responsible for the premium, and the Husband owns the policy on his life and is responsible for the premium. Each party shall continue in full force and effect the life insurance policy presently in existence on their respective lives, for the benefit of the other party in order to provide for the minor child, at least until the minor child turns 18 years old.

11. TAX EXEMPTION: The Husband and Wife agree to file a joint tax return for the year 2012 and the parties agree to split equally a tax refund or tax deficiency. The payments have been made on behalf of the parties personally, as well as on behalf of the business, TLIC Worldwide, Inc.

The parties shall file a separate tax return for 2013. Any tax liability due for TLIC Worldwide, Inc. shall be the Husband's sole responsibility. In 2013, the Wife shall be allowed to claim the mortgage interest and real estate taxes paid on the marital domicile and the Husband shall be allowed to claim the minor child as a dependent. The parties shall alternate who claims K.P. as a dependent each year thereafter, as long as they maintain a shared placement schedule. If the placement/visitation schedule changes, parent with primary placement will be allowed to claim the minor child as a tax deduction.

The parties agree to cooperate with one another to execute any paperwork as may be required by the IRS or State Of Rhode Island, if any, to allow them to claim the child as a dependent.

The parties have filed joint income tax returns at all material times in the past. To the extent that the same may be audited by the Internal Revenue Service and to the further extent that said audit discloses additional taxes and/or penalties and/or interest due and payable on said joint tax returns, the parties agree as follows: the parties shall be equally responsible for all of the additional taxes penalties and/or interest.

12. REAL ESTATE AND BUSINESS ASSETS:

A. MARITAL DOMICILE: The parties own real estate located at 932 Saugatucket Road in South Kingstown, Rhode Island. The Husband shall transfer all of his right, title and interest in said property by Quitclaim Deed to the Wife forthwith upon the signing of this Agreement. The Wife agrees to refinance the property to release the Husband from the Promissory Note forthwith upon the

5

SP

signing of this Agreement, at her cost. The parties shall equally pay the mortgage, taxes, and insurance on said premises in a timely fashion as long as they are both living there. The Husband agrees *to* vacate on or before October 10, 2013. Upon the Husband vacating the premises, the Wife shall be solely responsible for paying the mortgage, taxes and insurance on said premises, and she agrees to hold the Husband harmless and indemnify him thereon. The parties agree that the fair market value of the house is $290,000. As of August 15, 2013, the payoff amount for the mortgage is $184,370. The parties agree that there is $105,630 Dollars of equity in this asset for purposes of equitable distribution detailed in Section 12 (C) below. This real estate shall be awarded to the Wife.

B. Condominium: The parties have a Limited Liability Company known as Maple Tree Holdings, LLC. Maple Tree Holdings, LLC holds the title to the real estate located at 400 South County Trail, Unit 208, Liberty Park Condominium, Exeter, Rhode Island (hereinafter the ":condominium"). Maple Tree Holdings, LLC holds a lease with TLIC Worldwide, Inc. TLIC Worldwide, Inc. is the parties' business, which shall be awarded to the Husband as detailed below in Section 12 v,-ithin this Agreement. Tue Husband agrees to transfer all of his right, title and interest in Maple Tree Holdings, LLC to the "\Vife, at his cost, which shall include his right, title and interest in the condominium. The parties agree that the Husband shall utilize Harry Cesario to draft the paperwork necessary to transfer the LLC. Until such time as the interest is transferred, the parties shall be equally responsible for the payment of the mortgage, ta..es and insurance thereon. The Husband and Wife, as owner of TLIC \Vorld–wide, Inc. and own_er of Maple Tree Holdings, LLC, respectiveiy, they shall re-negotiate the terms of the existing lease between the two entities. The parties agree that the rent shall be $1600 per month to cover the cost of the mortgage, taxes, 9..1?-9 r̄ - and insurance. TLIC Worldwide will be responsible to pay any maintenance and repairs associated with the property.

·Upon transfer of the Husband's interest in the condominium to the Vlife, she shall be solely responsible for the mortgage, ta..;ces,· condo fees and insurance on said premises, and she agrees to hold the Husband h essand indemnify him thereon. In th event the transfer cannot be effectuated via the trans{e of the LC interest, and it becomes necessary for the Wife to refinance the mortgage on this condominium in order to remove the Husband's name from the Promissory Note, she shall do so forthwith upon the signing of this Agreement.

The parties agree that the condominium has a fair market value _of $105,000. The parties agree. that the mortgage payoff is $43,981. A.ccordingly, the parties agree that there is $61,019 Dollars of equity in this asset for purposes of equitable distribution detailed in Section 12 (C) below. This real estate shall be attributed to

6

the Wife, subject to the parties executmg a satisfactory lease as outlined above within this section of this Agreement.

    C.    <u>Business</u>: The Wife shall transfer all of her right, title and interest in the business known as TLIC Worldwide, Inc. to the Husband, in exchange for $50,000 in cash, and the balance from retirement funds from the Husband's SRA n: - ded-fu J· to eql;aU;:,th -pa?tfe";- tere· in t l   ;;-(det d-below)  . Toe Husband shall be responsible for the cost associated with the transfer of TLIC to the Husband, and the parties agree the Husband shall utilize Ha..riy Cesario to draft the paperwor:k necessary. The $50,000 in cash shall be placed in the .W-ife's attorney's escrow account on or before September 1, 2013, and shall be held until such time as the Wife completes the transfer of her interest in the business. If said amount is not placed in escrow by that date, the Husband shall be deemed to be in willful contempt and in default of this AQ:Teement. The Husband shall retain all right, title and interest in the business known as TLIC Worldwide, Inc., he shall be entitled to any bank accounts in the name ·of the business, and he shall be solely responsible for any debt associated -with the business. The Husband agrees to indemnify and hold the Wife harmle_ss thereon. The parties agree that value of said business is $343,000. This asset shail be attributed to the Husb d  at this fair market value.

    D.    <u>Division Comuutation:</u> The amount to be transferred to the Wife from the Husband's SRA account to equalize the marital assets shall be $35,730.60, computed as follows:

    i.    Matital Domicile:    $105,630
        Condominium:    $61,019
        <u>Business Value:    $343.000</u>
        Total Marital Property: $509,649 / 2 =$254,824.50 each

    ii.    $254,824.50 Wife's share
        (166,649.00) Real estate
        ( 50,000.00) Cash .from TLIC
        <u>( 8.400.00) Credit for Household Furniture kept bv Vvife</u>
        $29,775.50 + 20% as agreed by the parties of 5955.10 = 35,730.60

        $35,730.60 to be transferred to the Wife

13. **EQUITABLE ASSIGNMENT OF PROPERTY:**
  A. <u>Bank Accounts & Investments.</u>

The parties acknowledge that they have separate bank accounts and agree that each shall have all rights title and interest to the bank accounts each in their respective names and control. Each party waives any and all interest in the bank accounts maintained solely by the other. The Wife has an account with Bank of America with an approximate balance of $8000.00. The parties agree that the balance of said account shall be used to pay outstanding attorneys' fees and costs to effectuate the provisions of this Agreement. After payment of the aforementioned fees, each party shall be entitled to one half of the balance in this account.

  B. <u>Automobiles:</u> The Wife drives a 2013 Kia, which is registered to her. The Husband drives a 2009 Nissan, which is registered to him. Each party is awarded all right, title and interest in and to their respective vehicles in their current use and possession free from any claim by the other. Each shall be solely responsible for any and all costs related to their respective vehicles and shall hold the other harmless and indemnify them thereon to the extent necessary. Further, each party shall be liable and responsible for any personal property taxes on their respective vehicles presently existing or in the future.

  C. <u>Retirement.</u> The parties intend to equalize their interest in their retirement accounts as of July 30, 2013, including gain and losses on that amount until the actual distribution date.

  i. The Wife has an IRA with TLIC, an SRA Plan with TLIC and a 401(k) through her employer, Phoemx Bulke Carriers. The total value of these accounts as of July 2013 is $109,338. The Wife shall retain all right, title and interest in these retirement plans and the Husband shall waive any right, title and interest he may have in these plans.
  ii. The Husband has a SRA Plan with TLIC. The value of this account as of July 201 is $126,944.
  iii. Therefore, each party is entitled to:
   $109,338 + 126,944 = 236,282 / 2 = 118,141
   $118,141 - 109,338 = $8,803 to be transferred to Wife

8

iv.  After the transfer, the Husband shall retain all right, title and interest in the remaining balance of said SRA, and the vVife shall waive any right, title and interest she may have in bis SRA.

v.  The parties shall equally pay the cost of the QDRO required, and shall each cooperate with one other to provide the information necessary to get the QDRO implemented. The amount to be transferred shall be $4,533.60 as of July 30, 2013, including gains and losses until the distrlbution date:-"i-hat a ount is the total-of $35,730.60 (total from 12D above) plus $8,803 (this section above).

14. DMSION OF-PERSONAL PROPERTY: Toe parties agree that they have already divided their personal property, furniture and furnishings to their mutual satisfaction. The Wife shall be entitled to the furniture and household furnishings in the marital domicile, and the Husband shall 2et a credit of $8400 as outlined in 12D above for this propeJ.i..f.

15. DMSION OF DEBTS

The parties represent and warrant to each other that they have not incurred any debts or made any contracts for which the other or the other's estate may be liable·. The parties shall each be responsible for all debts in their individual names, except as otherwise state herein. The parties agr e to remove each others names from all joint accounts and agree to indemnify and hold harmless for all costs, expenses and liabilities in connection with a claim or action by any creditor due to the other party's failure to make p;i.yment.

16. WANER OF ALWON-Y: In consideration of the terms· of this Agreetti.ent, the Wife permanently waives any and all rights she may have in and to receivi..ng alimony payments from the Husband as well as any other rights she may have in accordance with the General Laws of Rhode Island, 19-56, as amended, Section 15-5-16. Further, in consideration of the terms of this Agreement, the Husband permanently waives y and all rights he may have in and to receiving ·alimony payments· from the Wife as well as any other rights he may have in · accordance with General Laws of Rhode Island, 1956, as amended: Section 15-5-16.



17. **ADDITIONAL INSTRUMENTS:** Each of the parties shall execute any and all documents which are necessary or helpful to effectuate the provisions of this Agreement as the same may from time to time be requested by the other party or his or her representative.

18. **BREACH.** In the event that either party shall default in any of the undertakings of his or her part to be performed under the terms of this Agreement and after written notice from the other party the defaulting party shall not cure such default within a period of ten (10) days after the posting of such notice by regular mail addressed to the defaulting party at his or her last known address, the Wife or Husband may take all steps necessary to enforce the rights conferred upon her or him under the terms of this Agreement and to this end she or he shall have the right to employ counsel at the defaulting party's expense. The defaulting party shall either make direct payment of all reasonable fees of such counsel or shall reimburse the Wife or Husband for any such payments made by her or him.

19. **REVOCATION OF POWERS OF ATTORNEY.** In the event either party has signed any powers of attorney during the marriage of the parties appointing the other party as his or her attorney in fact, including but not limited to, any general powers of attorney, any limited powers of attorney and/or any health care powers of attorney, the parties agree that, upon execution of this Agreement, any such powers are hereby revoked and voided as a result of the signing of this Agreement.

20. **LIMITED WAIVER OF DISCOVERY.** Both parties acknowledge that they have each been advised by his or her counsel concerning his or her rights with respect to formal discovery in the Family Court of the State of Rhode Island in connection with the above-referenced divorce proceedings and each acknowledges that he or she has voluntarily agreed to limited discovery in this matter.

21. **MUTUAL PROHIBITION.** The parties agree that neither will undertake any actions which may undo, overturn or challenge the conveyances made by him or her to the other party pursuant to this Agreement and each specifically covenants and agrees that he or she will not make any filing of bankruptcy within ninety (90) days of the last conveyance made to the other party pursuant to the terms of this Agreement.



22. <u>MODIFICATION AND WAIVER:</u> A modification or waiver of any of the provisions of *this* Agreement shall be effective only if made in writing and executed with the same formality as this Agreement. No acts, deeds or conduct by the parties or either of them, including the failure of either party to insist upon strict performance of any of the provisions of *this* Agreement shall be construed as a waiver of any subsequent default of the same or similar nature.

23. <u>SITUS:</u> This Agreement shall be construed and governed in accordance with the laws of the State of Rhode Island.

24. <u>PARTIAL INVALIDITY.</u> If any provision of this Agreement is held to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect.

25. <u>BINDING EFFECT:</u> Except as otherwise stated herein, all provisions of this Agreement shall be binding upon the respective heirs, next of kin, executors, and administrators of the parties.

26. <u>SEPARATE PROPERTY:</u> Except as otherwise more specifically provided in this Agreement, all of the property of each of the parties hereto; both real and personal, now owned by him or her; or to which he or she may hereafter become entitled: shall be and remain his or her sole and separate property, free from all rights of the other spouse and party hereto: with power in the party owning such property to deal with or otherwise dispose of the same as if he or she were single. Each of the parties shall, from time to time, execute all such deeds or other instruments as may be necessary or helpful to enable the other party hereto to convey, assign, sell, give or otherwise deal with all of his or her said property, both real and personal, including not only property which he or she now owns and possesses, but also any which he or she may own or possess in the future; and each of the parties hereto releases and quit-claims unto the other; and shall release and quit-claim unto the other, or to such others as he or she respectively may request, all of his or her rights of curtesy or of dower, as the case may be, and all other rights, statutory or otherwise, in and to any real estate of which such other spouse and party hereto is, or may become seized and possessed, or to which he or she may otherwise be or become entitled. It is the intention of this clause to permit and empower each of the parties hereto to deal with his or her own separate property now owned or hereafter acquired without any let, hindrance, claim, demand or assertion of right of or by the other party and in all respects as if each party hereto were single.

27. **FULL DISCLOSURE:** Each party represents that they have made a full and total disclosure of all of their assets or any assets to which they have any right or entitlement. Each party has, throughout the proceedings, complied fully and completely with the other party and/or their accountants and attorneys so that full opportunity has existed for parties to examine any and all aspects dealing with the financial condition or assets of the other. Each party represents that they have been represented by attorneys and accountants of their choice and that they have had full opportunity to examine the assets and records of the other. In the event that either party has failed to divulge the same, then the parties will share the relative value of the undisclosed asset based upon the equities earned, and the party who failed to disclose said asset shall bear the full cost of the other's legal fees incurred from any legal proceedings necessary to resolve a dispute over said assets.

28. **WAIVERS AGAINST ACQUISITION OF ASSETS SUBSEQUENT TO THIS WITHIN AGREEMENT:** Each party waives any interest he or she may have in and to any assets acquired by the other party subsequent hereto and prior to the entry of any Final Judgment of Divorce.

29. **WAIVERS OF CLAIMS AGAINST ESTATES:** Each party waives and relinquishes any and all rights that he or she may now have, or hereafter may have, to bear as spouses, in the other party's estate; or to act as a legal representative thereof....

30. **MUTUAL RELEASES:** The parties release each other from any and all claims and demands of every nature which they ever had, now has or hereafter may have for or on account of anything whatsoever from the beginning of the world to the day and the date of these presents, provided, however, that nothing in this Agreement shall operate as a release from any of the obligations or as a waiver of any of the rights arising out of the provisions of this Agreement, or operate as a release, waiver, compromise, or condonation of any grounds which either party has or may have against the other for an absolute divorce under the laws of any jurisdiction in the U.S. for State...

**VOLUNTARY EXECUTION:** Each of the parties feel that the within Agreement is fair and equitable and affirmatively represents that the Agreement is voluntarily entered into by him and her respectively. Each party shall sign any and all documents necessary to effectuate the intent and purpose of this Agreement.

MP
SF

32. <u>ENTIRE AGREEMENT</u>: This Agreement constitutes the entire agreement between the parties and may not be modified in any manner, except by the mutual consent, in writing, of the Husband and the Wife. This Agreement shall be binding upon the parties hereto and their respective legal representatives and assigns.

33. <u>SEPARATE CONTRACT</u>: This Agreement shall be incorporated by reference and not merged in any Interlocutory Decision Pending Entry Of Final Judgment and Final Judgment of Divorce. It is the intention of the parties that this Agreement survive as a separate contract between the parties and shall have independent legal <u>significance.</u>

34. <u>BANKRUPTCY</u>: The parties acknowledge that each has accepted the provisions of this Agreement in consideration of each of their obligations to make any and all payments provided in this Agreement, and with the parties' mutual understanding and belief that neither of their obligations to make any and all said payments are dischargeable in bankruptcy pursuant to 11 USC Section 523(a)(15). If either party seeks a discharge in bankruptcy from claims of creditors, such party shall execute a reaffirmation agreement in favor of the other as provided for by Section 524(C) of the United States Bankruptcy Court, reaffirming their obligations under this Agreement.

IN WITNESS WHEREOF, the said Margarita Palange and Steven Palange have hereunto set their hands and seals to this Agreement, and to duplicate originals thereof, the day and date written in the acknowledgements below.

_____           _____
WITNESS                                              Margarita Palange

_____           _____
WITNESS                                              Steven Palange